UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**TONYA THOMAS-WOODS,**

    **Plaintiff,**

    **v.**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civ. No. 20-06877 (KM)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    The plaintiff, Tonya Thomas-Woods, brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons stated below, the decision is **AFFIRMED**.

**I.    BACKGROUND**[1]

    Thomas-Woods alleged disability beginning in September 2011 due to herniated discs in her neck and back, but also due to finger pain, depression, and anxiety. (R. 11, 15, 369.) Prior to that date, she had been treated for degenerative disc disease in her spine. (*E.g.*, R. 501–11.) In November 2011, she was in a car accident, resulting in some back and neck pain, which was not present during a follow-up two weeks later. (R. 626, 630–34.)

    Several physicians performed examinations of her. They noted her complaints of back pain and tenderness but also normal gait and normal or

---

[1]    Citations to the record are abbreviated as follows:

    DE = docket entry

    R. _ = Administrative Record (DE 6) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 6 attachments)

    Pl. Br. = Thomas-Woods's Moving Brief (DE 11)

somewhat reduced range of motion. (R. 645–48, 737, 741, 764–65.) Similarly, two state agency consultants reviewed her files and opined that she could perform a range of light work with postural and environmental limitations. (R. 111–13, 126–28.)

She received routine treatment from Dr. Harry Lin. He wrote, in February 2015, that she had not been able to work since 2011 and could not do so for the next year. (R. 660.) Still, in June 2015, Dr. Lin reported that she had normal range of motion, normal gait, and no atrophy. (*E.g.*, R. 771, 777, 775, 800–04.) Later, in February 2017, he opined that she could sit less than one hour in an eight-hour workday and stand and/or walk less one hour in an eight-hour workday. (R. 750.) But in examinations until June 2018, he noted no specific complaints of back or neck issues. (R. 766, 768, 1112, 1116, 1120, 1124.)

Thomas-Woods applied for disability benefits, and a hearing was held. (R. 69–102.) An ALJ denied her claim, but the Appeals Council remanded. (R. 156–60.) After another hearing, the ALJ issued a new decision finding Thomas-Woods not disabled. (R. 7–33.) This appeal followed.

## II. DECISION FOR REVIEW

### A. The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the

Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**B. The ALJ's Decision**

The ALJ applied the five-step framework.

At step one, the ALJ determined that Thomas-Woods had not engaged in substantial gainful activity during the period from her alleged onset date of September 2, 2011, through her date last insured of June 30, 2017. (R. 13.)

At step two, the ALJ found that Thomas-Woods had the following severe impairments: degenerative disc disease, degenerative joint disease of the right knee, seizure disorder, radiculopathy, peripheral neuropathy, bipolar disorder

with psychotic features, panic disorder without agoraphobia, and opioid dependence/abuse. (*Id.*)

At step three, the ALJ found that Thomas-Woods's impairments, individually and in combination, did not meet or equal any of the listed impairments. (R. 14.)

At step four, the ALJ found that Thomas-Woods had the RFC to perform a range of sedentary work with limitations. She could, among other things, sit for six hours, stand or walk for two hours, climb ramps and stairs occasionally, perform simple routine tasks, make simple work-related decisions, and occasionally interact with co-workers. Accordingly, the ALJ found that she was not able to perform any past relevant work as a daycare worker, case aide, or psychiatric aide. (R. 16.)

At step five, relying on a vocational expert's testimony, the ALJ found that Thomas-Woods was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (R. 24.) Accordingly, the ALJ concluded that she was not disabled at any time during the relevant period. (R. 25.)

### III.   DISCUSSION

Thomas-Woods offers a few reasons to vacate the ALJ's decision, but none is persuasive.

At step three, she argues that the ALJ erred in finding that her impairments did not meet or medically equal a listed impairment, namely Listing 1.04A. (Pl. Br. at 22–24.) "For a claimant to show [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Jones*, 364 F.3d at 504 (citation omitted). Listing 1.04A requires, among other things, "[e]vidence of nerve root compression," "limitation of motion of the spine," and "motor loss." 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 1.04A. But as even Dr. Lin noted, from June 2015 to her last date insured, Thomas-Woods had full range of motion of her neck, normal range of motion of her extremities, normal gait, and no obvious muscular atrophy. (R.

4

800–17.) Likewise, other physicians reported that she did not show the required motor loss. (R. 598, 615, 646, 728, 765.) Finally, to the extent her brief vaguely argues that her impairments were inadequately compared or combined, that is insufficient to warrant reversal. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

Next, Thomas-Woods argues that the RFC was not supported by the evidence and, in particular, did not give serious consideration to her subjective complaints of pain. (Pl. Br. at 17–25.) The RFC finding, however, was based on reports from multiple physicians and state agency consultants, many of which Thomas Woods ignores in favor of her preferred evidence. (R. 16–21.) Accordingly, even if the Court were to credit all her arguments, there is still substantial, unchallenged evidence to support the ALJ's decision. *See Jones*, 364 F.3d at 503.

Regardless, the ALJ did not ignore her subjective complaints of pain. While an ALJ must consider such complaints, "the ALJ is not required to credit them" fully, particularly where such statements are undermined by other evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011). The ALJ explained that (1) Thomas-Woods had many unremarkable examinations (R. 22); (2) even her examinations with Dr. Lin showed some normal findings, such as no signs of atrophy or abnormal gait (R. 23); (3) her treatment throughout the relevant period was fairly conservative, and she refused certain tests (R. 23); and (4) she maintained some normal daily activities (though they were affected by her condition), and even some special activities, like vacations (R. 22). Accordingly, there was considerable evidence weighing against full acceptance of Thomas-Woods's subjective complaints, so the fact that they did not result in her preferred RFC is no reason to disturb the ALJ.

Finally, Thomas-Woods argues that the ALJ improperly discounted the opinion of Dr. Lin, her treating physician. (Pl. Br. at 25–29.) However, "the opinion of a treating physician does not bind the ALJ on the issue of functional

capacity." *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011). "If, . . . [a] treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ clearly explains [his] reasons and makes a clear record." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007). As explained, the ALJ relied on evidence from other physicians and state agency consultants and found that such evidence outweighed or was inconsistent with Dr. Lin's opinion. (R. 20.) Likewise, the ALJ found that Dr. Lin's reports themselves, which included some positive findings like the lack of atrophy, tended to indicate that his opinion was not adequately supported. All said then, the ALJ had a basis to depart from Dr. Lin's opinion.

All in all, because there was substantial evidence to support the decision the ALJ made, this Court is not free to reweigh the evidence.

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is affirmed.

A separate order will issue.

Dated: August 26, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**